John M. TAYLOR, etc., et al.,
Plaintiffs, Appellants,

v.

HERCULES, INC., Defendant, Appellee.

No. 85–1532.

United States Court of Appeals,
First Circuit.

Argued Nov. 14, 1985.
Decided Jan. 3, 1986.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff-appellant John M. Taylor ("Taylor") appeals from an order of the United States District Court for the District of Massachusetts granting summary judgment to defendant-appellee Hercules, Inc. ("Hercules") in an action for breach of an employment contract. Because we agree there is no genuine issue of material fact in dispute, we affirm.

## I.

Taylor had been a salaried employee at the Hercules plant in Taunton, Massachusetts, for "many years,"[1] when Hercules sold its plant to Haskon Corporation on October 1, 1980. It is undisputed that Hercules' employees were offered continued employment under the new ownership. However, some employees, including Taylor, elected early retirement as of the date of the sale and began receiving payment under Hercules' pension plan.

On March 16, 1984, Taylor brought suit in district court under diversity jurisdiction, purportedly on behalf of a class of 66 present and former salaried employees of Hercules.[2] He sought "severance pay" benefits from Hercules which he asserted were owed to him and the alleged class when the Taunton plant was sold to Haskon and they became "severed" from Hercules. Taylor claimed that he had an "implied in fact contract" which provided for severance pay benefits upon sale of the Taunton plant.

In support of his claim, Taylor submitted a one-page excerpt from an eight-page pamphlet ("Pamphlet") that he had re-

Ira L. Lipman with whom Lipman & Figman, Brockton, Mass., was on brief for appellants.

Stephen Y. Chow with whom Robert D. Canty, and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief for appellee.

1. According to his application for pension benefits, Taylor was employed by Hercules as of October 1939, which would mean he had been employed approximately 41 years. However, Taylor stated in his affidavit that he had worked for Hercules and its predecessor for approximately 30 years.

2. Although the district court apparently treated this as a class action, the class was never certified. *See* Fed.R.Civ.P. 23.

ceived from Hercules, allegedly sometime in 1974, summarizing the employee benefits offered by the company. In this excerpt, a section entitled "Dismissal Salary Plan" provided in part that,

> At some locations, this Plan provides financial assistance in addition to state unemployment compensation. It is designed to aid employees who are unemployed through no fault of their own. It does not apply to those employees who are eligible for retirement under the Hercules Pension Plan.

On the same page, highlighted by a contrasting color background and framed in black, was the following statement:

> This brochure is intended to summarize typical benefit plans in effect at most locations. Employees at each location will receive a plan description covering each plan in effect at that location. Should there be any differences in interpretation between any summaries and the formal plan texts or applicable contracts, the formal plan texts or contracts will govern.

Taylor also stated that he received in July 1976 a yellow loose-leaf notebook entitled "Hercules Benefit Handbook," ("Handbook") which was periodically updated with the latest versions of the various employee benefit plans. While he conceded in his affidavit that he received plan descriptions for other benefit plans, including the "Hercules Employee Savings Plan" and "Long Term Disability Insurance Plan for Salaried Employees," Taylor claimed that he never received any section for this Handbook which detailed Hercules' "Dismissal Salary Plan" at the Taunton plant.

On April 19, 1984, Hercules moved to dismiss for failure to state a claim, or alternatively, for summary judgment. In support of its motion, Hercules submitted what it claimed was the controlling document on the issue of severance pay—a ten-page text entitled "Hercules Dismissal Salary Plan" ("Handbook Plan") that was purportedly designed to be included in the Handbook. According to defendant's affidavit, this Handbook Plan was the only

"dismissal salary plan" in effect at the Taunton plant from July 1978 to October 1, 1980, the date the plant was sold.

The Handbook Plan specifically provided that dismissal salary benefits would not be paid to employees who, as Taylor did, "retire and receive immediate retirement benefits," or who "are at a location that has been sold and [ ] are offered employment by the new employer." Hercules argued that these provisions plainly defeat Taylor's claim, as he had elected to take retirement benefits. Hercules also claimed that, in any case, Taylor could not recover, as the Pamphlet failed to set forth a contract and stated besides that the "dismissal salary plan" did not apply to employees eligible for retirement.

On July 6, 1984, Taylor moved for leave to amend his complaint to divide the purported class into one subclass, represented by Taylor, of those who had elected to retire when the plant was sold; and another, represented by Lionel C. Diaz, of those who did not elect retirement. After a hearing on July 9, 1984, the magistrate recommended that summary judgment be granted in favor of Hercules but that plaintiff be given leave to file an amended complaint, although she believed that amendment would be futile.

Thereafter, the district court, without comment, granted summary judgment to Hercules in accordance with the magistrate's recommendations. But the court denied Taylor's motion for leave to amend his complaint. Taylor now appeals.

## II.

Before granting summary judgment under Fed.R.Civ.P. 56, a court must find that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We agree that Hercules successfully met its burden of showing the absence of such a dispute by producing a copy of the Handbook Plan, well supported by an affidavit from Edward Carrington, the Director of Benefits at Hercules. Carrington stated from personal knowledge that the Hand-

book Plan represented the dismissal salary plan in effect at Taunton when the plant was sold. The provisions of this Plan would, without rebuttal, negate both Taylor's claims and, if relevant, those of the purported class members as well.

Plaintiff then had the burden of showing the "existence of an issue of fact which is both 'genuine' and 'material.'" *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). To be considered "genuine," there must be "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). For a factual dispute to be "material," it must "affect[ ] the outcome of the litigation." *Pignons S.A. de Mecanique v. Polaroid Corp.,* 657 F.2d 482, 486 (1st Cir.1981). Taylor has failed to produce, as the magistrate said, "even a modicum of sufficient evidence" that there is a genuine factual dispute.

■ Reading the record in the light most favorable to Taylor, *see Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.,* 718 F.2d 1201, 1204 (1st Cir. 1983), the only real issue of fact that seems to emerge is whether Taylor and the other employees ever received a copy of the Handbook Plan. Because of this non-receipt, he contends that the Pamphlet, and not the Handbook Plan, should govern. But, as the magistrate pointed out, the determinative issue here is not whether Taylor or members of his alleged class ever received a copy of the Handbook Plan but rather whether that plan was in legal effect at the Taunton plant on the relevant date. Taylor offered nothing to show it was not. He did not submit evidence of some alternative plan, allegedly in effect at the Taunton plant, which might confer dismissal benefits in his case. Rather he relied exclusively on a brief Pamphlet excerpt whose terms complement rather than contradict the Handbook Plan.

■ The Pamphlet states that it is intended to summarize "typical benefit plans in effect at most locations," that the dismissal salary plan is available only at "some locations," and that a plan description will be received by employees at each location where the dismissal salary plan is in effect. The Handbook Plan appears to be precisely such a "plan description," although Taylor, to be sure, denies ever receiving it. The Handbook Plan goes on to elaborate in detail what is outlined only briefly in the Pamphlet, discussing some matters omitted from the Pamphlet as well as others which the Pamphlet mentions only generally.[3] We can see no basis for treating the two documents as alternative plans "in dispute," rather than simply as what the Pamphlet itself indicates they are—compatible texts intended to be read together.

■ Moreover, even if we were to accept Taylor's assertion that the Pamphlet is the controlling "plan" in this case, it provides no legal basis for his individual claim to severance pay benefits.[4] The Pamphlet specifically states that the dismissal salary plan "does not apply to those employees who are eligible for retirement under the Hercules Pension Plan."[5] Since it is un-

---

**3.** For example, the Pamphlet indicates only that "those employees who are eligible for retirement under the Hercules Pension Plan" are excluded from receiving dismissal pay benefits. However, the Handbook Plan excludes only those who actually "retire and receive immediate retirement benefits (excluding deferred pension benefits) under any pension plan maintained by Hercules, a subsidiary, or an affiliated company."

**4.** Taylor did not present any legal theory of recovery based on his alleged non-receipt of the

Handbook Plan. The Pamphlet's statement that the dismissal salary plan did not apply to employees who were eligible for retirement at very least placed Taylor on notice that one who retired *might* not be covered. And its reference to the controlling nature of "formal plan texts or contracts" suggested that if Taylor wanted to know more about this exception, he should ask to see these documents.

**5.** While appellant asserted during oral argument before this court that the exclusion of those "eligible for retirement" from receiving sever-

questioned that Taylor has retired and has received pension benefits, he would appear to fall a fortiori within the "retirement eligibility" exception. For the same reasons, the subclass Taylor proposes to represent in the amendment to the complaint— namely those employees who had elected retirement benefits—would also be excluded.

■ As for those alleged (but uncertified) class members who did not elect retirement benefits,[6] the Pamphlet did not give rise to an enforceable contractual obligation in their case either.[7] The terms of the Pamphlet indicate only that it was intended as a general summary of "typical" employee benefits "in effect at most locations" where Hercules did business. This language cannot be construed as promising employees at a particular location any particular employee benefit, especially when the Pamphlet expressly limits the applicability of Hercules' "dismissal salary plan" to "some locations" only. The further explanation that "[e]mployees at each loca-

tion will receive a plan description covering each plan in effect at that location," and that "formal plan texts will govern," makes it quite clear that the definitive terms of benefit plans lay elsewhere. At the least, employees were on notice that further inquiries would be needed to determine whether a plan entitling them to severance pay benefits existed. It is apparent, therefore, that even those who did not elect retirement benefits would be unable to recover on the basis of anything stated in the Pamphlet alone; and of course, they are expressly barred from recovering under the terms of the Handbook Plan that Hercules has tendered as the plan actually in effect.

With respect to the district court's denial of leave to amend, we uphold the district court's decision as well within its discretion. For the reasons discussed, amendment would indeed appear to have been futile, and summary judgment unavoidable. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

---

ance pay benefits was contrary to existing law, we decline to address this argument since the record does not indicate that it was raised in the proceedings below, *see Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979), or in appellant's brief, *see Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir.1983), and there are no compelling circumstances warranting any exception to these two rules, either of which by itself suffices to bar argument on appeal. We also note that the two cases that appellant's counsel brought to our attention after oral argument were both suits by the Equal Employment Opportunity Commission, were in a totally different procedural posture than the case at bar, and involved claims of age discrimination, which are not at issue here.

6. We assume here, purely for the sake of argument, that Taylor could "fairly and adequately protect the interests of the class," as required under Fed.R.Civ.P. 23(a)(4), and that this case was proceeding as a formal class action. However, since Taylor was excluded from receiving any severance pay benefits by the terms of the Pamphlet, it seems extremely unlikely that he could adequately represent those whose claims were fundamentally different from his own. *See also* Rule 23(a)(3) ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); Rule 23(b)(3)

("questions of law or fact common to the members of the class [should] predominate over any questions affecting only individual members"). Taylor appears to have conceded his inability to represent persons other than retired employees like himself, since he asked the court below to permit him to amend the complaint to include one Diaz as the representative of the subclass of those who did not elect retirement benefits.

7. The only Massachusetts case cited by Taylor on this issue, *Barry v. Dymo Graphic Systems, Inc.*, No. 79–3666 (Nov. 15, 1983), is a decision of the state superior court interpreting a personnel manual as granting severance pay when employees were involuntarily severed from their jobs because of the sale of the company. This case was reversed by the Massachusetts Supreme Judicial Court on the ground that any state law interpreting the particular "severance pay" plan was preempted by federal law under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1381 (1982) ("ERISA"). 394 Mass. 830, 478 N.E.2d 707 (1985). Even if the superior court's reasoning in *Barry* were otherwise correct, however, we do not see how that decision could support Taylor's interpretation of the Pamphlet.

*Affirmed. Double costs to appellee payable by appellant's counsel and not by appellant personally.*[8]

---

**8.** In the original complaint, designedly or otherwise, it was not mentioned that Taylor had taken early retirement at the time the plant had been sold. In fact, the complaint alleged that Taylor continued his employment under the new Haskon ownership. This inaccuracy as to a key point raises questions either as to the care with which counsel was performing his responsibilities or as to his client's own reliability. We further note that Taylor doggedly went forward with the present unfounded claim without, apparently, availing himself of discovery which would have allowed him to determine and verify what dismissal salary plan was in effect when Taylor decided to take early retirement.