Rhonda S. LANG, Appellant,

v.

MBANK DALLAS, Appellee

No. 05-88-00046-CV.

Court of Appeals of Texas,
Dallas.

Aug. 8, 1988.

Rehearing Denied Aug. 14, 1988.

Richard D. Pullman, Dallas, for appellant.

William C. Strock, Matt W. Holley, Dallas, for appellee.

Before McCLUNG, ROWE and THOMAS, JJ.

ROWE, Justice.

Rhonda S. Lang sued MBank Dallas (MBank) to recover alleged compensation due her under a profit sharing plan. MBank moved for summary judgment, asserting that Lang was not eligible for compensation under the terms of the plan which required participants to be actively employed at the time of distribution. The trial court granted the summary judgment motion, and Lang appeals. In her only point of error, Lang contends that genuine issues of material fact exist, and, consequently, the trial court erred in granting the summary judgment.

Summary judgments are only proper when the movant's evidence establishes movant's right to judgment as a matter of law. *Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex.1984). The moving party must establish that there are no genuine issues of fact. *McFadden v. American United Life Insurance Co.*, 658 S.W.2d 147, 148 (Tex.1983). Evidence favorable to the nonmovant is taken as true, and every reasonable inference must be indulged in the nonmovant's favor. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). All doubts concerning the existence of a material fact question are to be resolved against the party moving for summary judgment and the evidence viewed in the light most favorable to the nonmovant. *Bankers Commercial Life Insurance Co. v. Scott*, 631 S.W.2d 228, 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.).

MBank hired Lang in May of 1985 as a futures and options trader. The offer was extended to Lang in the form of a letter from Philip Kenny, MBank's manager of human resources, which stated in pertinent part:

On behalf of MBank Dallas, I am pleased to extend to you an offer of employment for the position of Trader II in our Capital Markets Group at a starting annual salary of $35,000. You will also be eligible to participate in the incentive plan as discussed with Jim Madden.

Lang worked through the rest of 1985 and received her 1985 incentive plan payment of $38,000 in February of 1986. In April of 1986, Lang suffered heavy losses in her trading. She initially attempted to hide the extent of the losses from management through misrepresentations but subsequently resigned when the losses were discovered. Lang contends that even with the losses, she is entitled to incentive plan payments in excess of $100,000 stemming from profits she had made in the first four months of 1986.

MBank, in its motion for summary judgment and on appeal, contends that Lang is not eligible for the incentive plan payment. The record reflects that MBank had only one incentive plan during the period of Lang's employment. The plan was adopted in 1983 and covered all employees in the Capital Markets Group. This plan, through a complex formula, provided for payments based on individual and group performance. The plan also provided that payments to "Traders" were to be made at least 45 days after the end of the year and that payments were only to be made to participants still actively employed on the date of the disbursements. MBank contends that since Lang was not employed by the bank in February of 1987 when the incentive payments for 1986 were disbursed, she failed to qualify and has no right to an incentive plan payment.

■ An employee who is entitled to a percent of profits ordinarily, on termination within a compensation period, may recover his share of the profits earned up to the date of termination. *Haggar Co. v. Rutkiewicz,* 405 S.W.2d 462, 465 (Tex.Civ.App.

—Waco 1966, writ ref'd n.r.e.); *Fujimoto v. Rio Grande Pickle Co.,* 414 F.2d 648, 653 (5th Cir.1969). However, the terms of the incentive plan can qualify this general rule and limit payment to active employment at the time of disbursement. *See Walker v. American Optical Corp.,* 265 Ore. 327, 509 P.2d 439, 441 (1973). The Oregon court held that the employer had no duty under a similar "bonus plan" to pay the bonus to an employee who voluntarily quit prior to the disbursement date.

MBank, in support of its summary judgment motion, attached a sworn copy of the incentive plan and, further, showed by way of affidavit, that Lang, as a trader in the Capital Markets Group, participated in that plan. This established a right to summary judgment since the plan required employment at disbursement. The burden then shifted to Lang to show some reason why the plan's limitations were not applicable to her. *Bankers Commercial Life Insurance Co. v. Scott,* 631 S.W.2d at 232. Lang's affidavit in support of her response to motion for summary judgment asserts that she was never informed of the limitation on incentive plan payments and that she was not put on notice of a formal, documented incentive plan because the reference to the plan in her offer letter was in lower case letters. She admits that the part of the plan pertaining to the payment calculation conformed to her understanding of the plan.

We find this case very similar to the First Circuit Court of Appeals case of *Taylor v. Hercules, Inc.,* 780 F.2d 171 (1st Cir.1986). The employee was given a pamphlet summarizing the terms of a severance plan but was not given the formal handbook text of the plan. The employee argued that the pamphlet should govern his employment. The court rejected that contention and held that:

... the determinative issue here is not whether [appellant] ever received a copy of the Handbook Plan but rather whether the plan was in legal effect ... on the relevant date. [Appellant] offered nothing to show it was not. He did not submit evidence of some alternative plan, allegedly in effect ..., which might confer dismissal benefits in his case. Rath-

er, he relied exclusively on a brief Pamphlet excerpt whose terms complement rather than contradict the Handbook Plan.

*Taylor,* 780 F.2d at 174.

The offer letter relied on by Lang in this case merely states that if employment is accepted, there is an incentive plan at MBank which Lang would be allowed to participate in as part of her compensation. The letter in no way shows that the terms of the plan are subject to negotiation. The letter, however, does inform Lang that there is a plan of which she should learn the specific details. Lang's argument that she is not governed by the limitation on payment because she was never told of the limitation is of no consequence absent a showing that she actively negotiated an alternative plan. *Id.* We hold that an employee is presumed to fall under established company benefit plans unless specific bargaining for different benefit terms is shown. Lang's reliance on ignorance of the plan's terms does not raise a material fact issue. Therefore, the trial court correctly granted summary judgment in favor of MBank.

We overrule Lang's point of error and affirm the trial court's judgment.