David M. TAYLOR, Plaintiff

v.

LOTUS DEVELOPMENT CORP., Defendant.

Civ. A. No. 94–1139.

United States District Court, D. Maryland.

Oct. 20, 1995.

Joel M. Abramson, Columbia, MD, for plaintiff.

Ky E. Booth, Kirby, Swidler & Berlin, Washington, DC, for defendant.

## MEMORANDUM OPINION

DAVIS, District Judge.

This case originated in the Circuit Court for Howard County, Maryland. On April 19, 1994, it was removed to this Court by the Defendant, Lotus Development Corporation ("Lotus"). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Both parties to this dispute have filed motions for partial summary judgment. The Court has considered the parties' various submissions, and no hearing is deemed necessary. Local Rule 105.6 (D.Md.1995).

### (i)

■ A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Mere speculation by the non-movant cannot stave off a properly supported motion for summary judgment. *See Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *See Celotex*, 477 U.S. 317 at 324, 106 S.Ct. 2548 at 2553, 91 L.Ed.2d 265; *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512 ("mere existence of a scintilla of evidence" is insufficient for non-movant to withstand a motion for summary judgment); *Shealy*, 929 F.2d at 1012.

### (ii)

The Plaintiff, David M. Taylor, a Maryland resident, was employed by Lotus from June

1992 until February 1994 as a computer software sales representative out of Lotus's District of Columbia office located in Arlington, Virginia.[1] Lotus, a Delaware Corporation, maintains its principal place of business in Massachusetts. Lotus develops, markets and sells computer software products throughout the world. Taylor's sales territory included the District of Columbia, Virginia, West Virginia and the southern half of Maryland. In June 1992, Taylor and Lotus entered into a formal written agreement ("employment agreement") which outlined the terms and conditions of Taylor's employment including the base salary and commissions that he was entitled to receive. The employment agreement set forth, *inter alia,* that Taylor

> shall receive the compensation listed on [his] offer letter from Lotus Human Resources; in addition, [he] may participate in such employee benefit plans and receive such other fringe benefits according to the applicable benefit plan and Lotus Corporate Policies.... [T]hese employee benefit plans and fringe benefits may be amended, enlarged, or diminished by Lotus from time to time.

Pl.'s Mot.Part.Summ.J. at Ex. A.

On a yearly basis, Lotus modified its commission payment schedule. In April 1993, Lotus issued its "1993 Sales Plan: North American Sales" ("1993 Plan"), which set forth the additional compensation terms for that year. The 1993 Plan adjusted both the base salary and commissions components of Lotus's sales force's compensation. Page 10 of the 1993 Plan explained that commissions were to be calculated as follows:

> Commission is calculated based on the year-to-date revenue for a sales representative's territory. Commission rates vary based on year-to-date performance and the number of months on quota. Employees

must be on quota for four months to qualify for the second level payment rate of 1.5%. Employees must be on quota for seven months to qualify for the third level payment rate of 2.0%.

| Performance | Rate Per Dollar |
| --- | --- |
| Up to 100% | 1.25% |
| 100%–110% | 1.5% |
| Over 110% | 2.0% |

*Id.*

On June 24, 1993, Plaintiff sent an e-mail message to Wendy Taylor, a Lotus representative, asking for her help in understanding how his April bonus payment amount of $1176.00 was calculated.[2] Df.'s Cross–Mot. Part.Summ.J. and Op. to Pl.'s Mot.Part. Summ.J. at Ex. A–12. On June 28, 1993, Ms. Taylor responded by e-mail:

> David,
>
> Your [April bonus] was calculated as follows:

| | |
| --- | --- |
| YTD[3] Quota | 1,128,680 |
| Times commission rate up to 100% | x .0125 |
| Equals YTD earned at 100% | 14,108.50 |
| Total YTD Revenue | 1,599,036 |
| Minus YTD Quota − | 1,128,680 |
| Equals YTD Revenue over 100% | 470,356 |
| Times commission rate over 100% | x .0150 |
| Equals YTD earned over 100% | 7,055.34 |
| Plus YTD earned at 100% + | 14,108.50 |
| Equals YTD earned | 21,163.84 |
| Minus YTD paid − | 19,988.00 |
| Equals Accelerator | 1,175.84 |

---

1. Taylor's physical location on a day to day basis is in dispute. Taylor maintains that he conducted a substantial portion of his business out of his home in Maryland. Lotus states that whatever business he may have conducted out of his home was not officially recognized by Lotus.

2. The commissions for April were being discussed in June because commissions were generally calculated a few months after the sales. "This 'lag time' resulted from the fact that reve-

nue data for a particular month (on which commissions for that month were based) were not available until after the month was over and additional time then was needed to collect and process that data before commissions for the month could be computed." Df.'s Mem. in Supp. of its Cross–Mot.Part.Summ.J. and Op. to Pl.'s Mot. for Part.Summ.J. at 4 n. 1.

3. "Year–To–Date."

*Id.* at Ex. A–13. Plaintiff replied to Ms. Taylor's explanation by e-mail the following day, stating that "[i]f I finished at the end of April $470,000 over quota, why am I not being paid 1.5% of that amount as indicated in your calculations? Why is the $7,055 amount being reduced to $1,175? I don't follow that commissions already paid to me should be backed out from a bonus payment?" *Id.* There is no indication from the documents submitted by the parties as to the outcome of this inquiry, or whether any additional inquiries were ever made.

In December 1993, Mike Lyons, the Sales Tracking Manager at Lotus, contacted Taylor. Lyons informed Taylor that since April 1993, Lotus had been incorrectly computing his commission payments. Lyons claimed that Lotus had been failing to deduct the commissions it had previously paid to Taylor prior to making its commission payments to him; therefore, according to Lotus's records, it had overpaid Taylor by approximately $44,000.00.

Whether or not Taylor acknowledged the alleged overpayments as being correct at that time is in dispute. Nevertheless, after some negotiation between Taylor and Lotus, Taylor apparently refused to return any monies to Lotus voluntarily. As a result, Lotus began to unilaterally withhold pay from Taylor in the following months in order to recoup its alleged losses.

By a letter dated February 15, 1994, Taylor gave Lotus two weeks notice of his intention to resign. In that letter, Taylor asserted that Lotus had failed to pay all the monies he was entitled to for work he performed in 1993, and he demanded payment of the outstanding sum. In response, Lyons sent a letter to Taylor, dated March 1, 1994, asserting that Lotus did not owe Taylor any monies; rather, Taylor still owed Lotus $27,110.06.

Taylor then instituted the present action. In his complaint, Taylor alleges that Lotus breached their contract. In addition, he contends that Lotus violated the Maryland Wage Payment and Collection Law, Md.Code Ann., Lab. & Empl. §§ 3–501 to 3–509 (1991

Repl.Vol., 1994 Cum.Supp.), in consequence of its failure to compensate him fully in the months following the impasse created by this dispute. Lotus counterclaimed for the approximately $27,000.00 that Taylor still owes it as a result of the alleged overpayments. Lotus contends that the overpayments were made in error, and that Taylor will be unjustly enriched if he is permitted to keep the overpayments. This action is currently before the Court on cross-motions by the parties for partial summary judgment with respect to liability only.

### (iii)
### *Breach of Contract*
### (a)

■ As a threshold matter, it is imperative for this Court to determine the applicable law. Generally, when this Court exercises its diversity jurisdiction, it applies the substantive law of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Erie Railroad v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938). In this case, the forum is Maryland.

■ In Maryland, however, "[i]t is now generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Kronovet v. Lipchin,* 288 Md. 30, 43, 415 A.2d 1096, 1104 (1980). *See also National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 610, 650 A.2d 246, 248 (1994). Generally, a choice-of-law provision will be honored in Maryland, unless "1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or 2) the strong fundamental public policy of the forum state precludes the application of the choice of law provision." *American Motorists Ins. Co. v. ARTRA Group, Inc.,* 338 Md. 560, 572, 659 A.2d 1295, 1301 (1995). *See also National Glass,* 336 Md. at 610–11, 650 A.2d at 248; *Kronovet,* 288 Md. at 44–45, 415 A.2d at 1104–06; Restatement (Second) Conflict of Laws § 187 (1971, 1989 Supp.)[4]. It is

4. § 187. LAW OF THE STATE CHOSEN BY THE PARTIES

(1) The law of the state chosen by the parties to govern their contractual rights and duties

undisputed that the parties to the present litigation signed an employment agreement which contains a choice-of-law provision. This provision states, in part, as follows:

> This Agreement shall be governed and construed according to the laws of The Commonwealth of Massachusetts, and shall be deemed to be effective as of the first day of ... [David Taylor's] employment by Lotus.

This Court finds no reason why the parties' choice of law in the instant case should not be enforced with respect to the breach of contract claim. Thus, the law of Massachusetts will govern this dispute.[5]

### (b)

◼ Taylor contends that under the terms of the contract he was to be paid according to the commission calculations contained on page 10 of the 1993 Plan. Those terms make no mention, according to Taylor, of deducting previously paid commissions from the net commission amount. Therefore, Taylor maintains that when Lotus withheld his pay in order to recoup the alleged overpayments, it breached the employment agreement by failing to compensate him for all the work he had performed.

Lotus, on the other hand, correctly argues that page 10 of the 1993 Plan only sets forth the terms for "calculating" commissions, not "paying" commissions. Lotus points to page 4 of the Glossary of Terms ("Glossary") attached to the 1993 Plan in support of its position. That page gives an example of how commissions are calculated and paid. It states that "[t]he actual monthly payment [a sales representative will receive] is the *differ-*

*ence* between the year-to-date commission earned and the year-to-date payments received in previous months." emphasis added) Lotus maintains that it erred by paying Taylor commissions without first deducting the year-to-date payments. Therefore, according to Lotus, it has already paid Taylor for all the work he had performed for it; thus, there was no breach. Moreover, Lotus argues that it is entitled to reimbursement for the amount of overpayment. Taylor responds by arguing that even if Lotus's interpretation of the 1993 Plan is correct, he was never shown page 4 of the Glossary and, therefore, he should not now be bound by its terms.

This Court finds little merit to any of Taylor's contentions. Essentially, he is asking to be compensated twice for the same work. A straightforward reading of the various terms of the contract (including the Glossary), as well as the explanation provided by Ms. Taylor to the Plaintiff in her e-mail message quoted above, demonstrate that actual monthly commission payments were the difference of the amount earned minus the amount previously paid. Regardless of what Taylor may or may not have actually believed, the contract language is clear. The clear language of the contract cannot be avoided. *See Somerset Svgs. Bank v. Chicago Title Ins. Co.*, 420 Mass. 422, 649 N.E.2d 1123, 1127 (1995) ("we construe and enforce unambiguous terms according to their plain meaning").

Furthermore, Lotus is correct in stating that it is immaterial whether Taylor ever received page 4 of the Glossary of the 1993

will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a

state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

5. In any event, the parties have not suggested that the application of Maryland law would dictate a result contrary to that resulting from the application of Massachusetts law.

Plan. Df.'s Reply to Pl.'s Resp. to Df.'s Cross–Mot.Part.Summ.J. at 7. In support of this proposition, Lotus directs this Court's attention to the opinion of the First Circuit in *Taylor v. Hercules, Inc.,* 780 F.2d 171 (1st Cir.1986). In *Hercules,* the plaintiff had been an employee of the defendant Hercules for a number of years. In 1980, Hercules sold its plant to another company. At that time, the plaintiff was given the option of continued employment with the new company or early retirement. Those who elected early retirement began receiving pension payments as of the sale date. The plaintiff had chosen early retirement. He brought suit almost 4 years after the sale of the plant, alleging that he was also entitled to receive severance pay based on a pamphlet given to him in 1974, which summarized the employee benefits offered by Hercules. In its motion for summary judgment, Hercules offered a document entitled "Hercules Dismissal Salary Plan." The dismissal plan stated that severance pay would not be paid to employees who "'retire and receive immediate retirement benefits,' or who 'are at a location that has been sold and [ ] are offered employment by the new employer.'" 780 F.2d at 173 (alteration in the original). The plaintiff claimed that he never received a copy of this document; therefore, he contended, he should not be bound by its terms. The district court rejected the plaintiff's argument, and granted summary judgment in favor of the defendant. On appeal, the Court of Appeals explained that "the determinative issue here is not whether [the plaintiff] ever received a copy of [Hercules Dismissal Salary] Plan but rather whether that plan was in legal effect at the ... plant on the relevant date." *Id.* at 174. *See also Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137, 1141 (3d Cir. 1993) (failure to distribute document regarding separation pay policy alone is immaterial to the question of entitlement to benefits under the policy), *cert. denied,* —— U.S. ——, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994).

In the instant case, there is no dispute that the 1993 Plan was in effect during the relevant time. Its terms clearly state that commissions already paid will be deducted prior to any payments being made. Whether or not Taylor received this portion of the 1993 Plan is immaterial for purposes of summary judgment. The conclusion is thus plain that, as a matter of law, Lotus has not breached its obligations under the employment agreement or the 1993 Plan.

(c)

██ As to whether Lotus is entitled to recoup its overpayments to Taylor, the Massachusetts appellate courts have not directly addressed the issue of restitution for overpayment. When a question of law has not yet been addressed by a state's supreme (or intermediate appellate) court "it falls to the federal courts to forecast what the [State] Supreme Court would hold if presented with this issue." *Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir.1981) (per curiam). *See also Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Cases in other jurisdictions support recovery of overpayments as the result of a computational error, *e.g., Mutual Life Ins. Co. v. William B. Kessler, Inc.,* 25 Misc.2d 242, 202 N.Y.S.2d 92 (1960). In that case, an insurance company had mistakenly overpaid death benefits to the beneficiary of a policy by $16,500.00 as the result of a number of clerical errors. The $16,500.00 represented an outstanding loan to the beneficiary which the insurer was entitled to deduct prior to making payment. The insurer discovered the error eight months after payment, and immediately notified the beneficiary. The beneficiary was unwilling to remit the overpayment. In ordering repayment, the court explained that it is a "well-settled equitable proposition that a party should not be unjustly enriched and that money paid because of a mistake of fact may be recovered back, even though the party making the mistake may have been negligent." *Id.* at 94 (citation omitted). *See also Gulf Oil Corp. v. Lone Star Producing Co.,* 322 F.2d 28 (5th Cir. 1963).

The treatise writers support recovery as well. In 13 *Williston on Contracts* § 1574 (Walter H. Jaeger ed., 3d ed. 1970), it is said

that "[o]ne who by error in computation, or by mistake of any fact pays a real or supposed creditor more than is his due, . . . may recover the over-payment. . . ." (footnote omitted). *See also Restatement of Restitution* § 20 (photo. reprint 1962) (1937) ("A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty . . . is entitled to restitution of the excess.").

▮▮▮▮ Massachusetts generally recognizes the doctrine of mistake of fact as a basis for recovery. *See, e.g., Mechanics Nat'l Bank v. Worcester Cty. Trust Co.,* 341 Mass. 465, 170 N.E.2d 476, 480 (1960) ("The general rule is that money paid under a mistake of fact can be recovered."); *Krinsky v. Pilgrim Trust Co.,* 337 Mass. 401, 149 N.E.2d 665, 668 (1958); *National Shawmut Bank v. Fidelity Mut. Life Ins.,* 318 Mass. 142, 61 N.E.2d 18, 20 (1945) ("A common instance in which restitution is ordered is where money is paid under a mistake of fact. . . ."). Therefore, it is the opinion of this Court that the Massachusetts Supreme Judicial Court would extend this doctrine to the present circumstances as well. In the instant case, Lotus has mistakenly paid Taylor in excess of the amount to which he was entitled to be paid due to a computation error. As such, Lotus is entitled to restitution of the overpayment. The amount which Lotus can recover from Taylor, however, is subject to any costs and expenses which Taylor incurred as a result of the overpayments.[6]

(iv)

*Maryland Wage Payment and Collection Law*

▮▮▮ Finally, Taylor has purported to assert a claim under the Maryland Wage Payment and Collection Law, Md.Code Ann., Lab. & Empl. §§ 3–501 to 3–509 (1991 Repl. Vol., 1994 Cum.Supp.) ("Wage Law"). Section 3–503 of the Wage Law prohibits an employer from making any deductions from the wage of an employee absent certain specified circumstances.[7] If an employer is found in violation of the Wage Law "and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage." *Id.* at § 3–507(b)(1). In light of this Court's discussion on the merits of Taylor's contentions to this point, it would appear, as a matter of law, that Lotus's basis for withholding pay was grounded in a "bona fide dispute" within the meaning of § 3–507(b)(1) of the Wage Law.[8] Nevertheless, even if this Court assumes that Taylor otherwise has an actionable claim under the terms of the Wage Law, recovery under the Wage Law would still be unavailable to Taylor because of the choice-of-law provision. The reasons for this conclusion follow.

▮▮▮ As explained *supra,* the parties to this dispute entered into a contract in which they chose the law of Massachusetts to govern their relationship. Their ability to determine the governing law, however, is not absolute. In Maryland, a choice-of-law

---

6. For example, in an e-mail message sent from Taylor to Lyons on December 14, 1993, Taylor suggested that an overpayment of $44,000 for 1993 would have pushed him into a higher tax bracket, causing him to incur additional tax liability for 1993. Df.'s Cross–Mot. for Part. Summ.J. and Op. to Pl.'s Mot. for Part.Summ.J. at Ex. A–16. In the event that Taylor paid taxes above and beyond the amount he would have been otherwise liable for in 1993 had he not received the overpayment, the balance of the overpayment amount due to Lotus would be offset by that amount.

7. Md.Code Ann., Lab. & Empl. § 3–503, provides:

An employer may not make a deduction from the wage of an employee unless the deduction is:

(1) ordered by a court of competent jurisdiction;
(2) authorized expressly in writing by the employee;
(3) allowed by the Commissioner [of Labor and Industry] because the employee has received full consideration for the deduction; or
(4) otherwise in accordance with any law or any rule or regulation issued by a governmental unit.

8. In fact, Taylor's Wage Law claim simply rehashes his breach of contract claim. Therefore, as a matter of law, "treble damages" are not available to Taylor in this case.

clause will not be honored if the issue is one "'which the parties could not have resolved by an explicit provision in their agreement,'" *Kronovet*, 288 Md. at 44–45, 415 A.2d at 1105 (quoting *Restatement (Second) Conflict of Laws* § 187(2)), and if "1) the state whose law is chosen has no substantial relationship to the parties or the transaction; or 2) the strong fundamental public policy of the ... state [which would have been the state of the applicable law absent the choice-of-law provision] precludes the application of the choice-of-law provision." *American Motorists*, 338 Md. at 572, 659 A.2d at 1301; *Restatement (Second) Conflicts of Law* at § 187. The issue of what remedies are available to an employee if his employer withholds pay is certainly one which the parties could have resolved by explicit agreement. Therefore, these exceptions to honoring the choice-of-law provision are inapplicable.

Moreover, it does not appear that either exception to the rule would have been otherwise applicable. First, it is clear that Massachusetts, as Lotus' principal place of business has a "substantial relationship to the parties or the transaction" involved in this dispute. *See Kronovet*, 288 Md. at 44, 415 A.2d at 1105. Second, the Maryland Court of Appeals has held that the mere presence of dissimilar law is insufficient to render a choice-of-law provision void; rather, Massachusetts law must run contrary to a strong Maryland public policy to be unenforceable. *National Glass*, 336 Md. at 612, 650 A.2d at 249 (citing cases). In both *National Glass*, 336 Md. at 612–15, 650 A.2d at 249–50 and *Bethlehem Steel v. G.C. Zarnas & Co.*, 304 Md. 183, 187–90, 498 A.2d 605, 608 (1985), the Maryland Court of Appeals determined that Maryland's strong public policy as embodied in its statutory provisions trumped a choice-of-law provision. The Maryland statutes involved in those cases, however, contained language which unambiguously expressed that their provisions represented fundamental public policy of the state; moreover, any purported waiver of the provisions contained in those statutes was expressly unenforcea-

ble. *See, e.g., National Glass*, 336 Md. at 614, 650 A.2d at 249–50 ("against public policy and is void and ... unenforceable," "may not waive," "void," and "against public policy of this State"). The Wage Law contains no such language. *See Allstate Ins. Co. v. Hart*, 327 Md. 526, 535, 611 A.2d 100, 104 (1992). The Wage Law does not appear to represent a fundamental policy of the state of Maryland simply by its existence. Taylor has offered no other evidence to suggest that the Wage Law represents fundamental public policy.

Accordingly, this Court concludes that the Wage Law's remedial provisions are unavailable for Taylor.

(v)

 In light of this Court's determination that all of Taylor's claims are without merit, the only remaining claim in this case is Lotus's counterclaim for approximately $27,-000.00. Thus, the amount in controversy has dropped below the $50,000.00 threshold required by 28 U.S.C. § 1332.[9] In *Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir.1995), the Fourth Circuit determined that "the supplemental jurisdiction model of discretion should apply when the amount in controversy falls below the fifty thousand dollar threshold, just as it does when a federal question or a diverse claim falls out of a case." *Id.* at 110. *See also* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988) ("[The Court's opinion in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),] strongly supports the conclusion that when a district court may relinquish jurisdiction over a removed case involving pendent state claims, the court has discretion to remand the case to state court."). In both situations, "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan*, 58 F.3d at 110. Moreover, "[t]here are *no* situations wherein a federal court *must* retain jurisdiction over

---

9. 28 U.S.C. § 1332 states in part:
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
 (1) citizens of different States....

a state law claim, which would not by itself support jurisdiction." *Id.*

■■■■■ In determining whether to retain or to remand the instant case to state court, this Court must consider a variety of equitable factors, including: "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* *See also Carnegie–Mellon,* 484 U.S. at 350 & n. 7, 108 S.Ct. at 619 & n. 7; *In re Conklin,* 946 F.2d 306, 322 (4th Cir.1991). Moreover, this Court should consider the "amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction." *Shanaghan,* 58 F.3d at 112; *Washington v. Union Carbide,* 870 F.2d 957, 962 (4th Cir. 1989).

In weighing these various factors, this Court finds that remand is the proper course of action. First, very little, if any, additional legal research would need to be performed by the parties. Second, any additional factual research which the parties must now engage in would have had to have been performed regardless of the forum. Thus, it does not appear that remanding this case to the Circuit Court for Howard County, Maryland, would be unduly inconvenient or unfair. *See Parker & Parsley Petro. Co. v. Dresser Ind.,* 972 F.2d 580, 587–88 (5th Cir.1992).

In addition, judicial economy will be served by remand to the state court, because the issues in this case

have been developed and narrowed in federal court, and, as a result, they will be in a posture to be readily resolved in state court. The court further finds that judicial economy would not be served by allowing ... [the] state claims [to be retained by the] federal court on the strength of a baseless federal claim.

*McCullough v. Branch Banking & Trust Co.,* 844 F.Supp. 258, 262 (E.D.N.C.1993), *aff'd,* 35 F.3d 127 (4th Cir.1994).

Accordingly, this case will be remanded to the Circuit Court for Howard County, Maryland, for resolution of the sole remaining issue, i.e., the amount of damages to which Lotus is entitled.[10]

### (vi)

In sum, Taylor's motion for partial summary judgment shall be denied. Lotus's motion for partial summary judgment shall be granted. This case shall be remanded to the Circuit Court for Howard County, Maryland, for further proceedings as deemed appropriate by that court. It will be so ordered by separate order entered herewith.

---

**10.** This Court notes, however, that remand gives the Plaintiff a second bite at the apple. The Maryland Court of Appeals most recently explained in *Gertz v. Anne Arundel County,* 339 Md. 261, 272–273, 661 A.2d 1157, 1163 (1995):

> Maryland Rule 2–602(a) makes clear that an order that does not adjudicate all of the claims in an action, or that adjudicates less than an entire claim, or that adjudicates the liabilities of fewer than all the parties to the action is not a final judgment and may be revised at any time before the entry of a final judgment. See *Rohrbeck v. Rohrbeck,* 318 Md. 28, 44, 566 A.2d 767, 775 (1989) (until there is a final judgment, under Maryland Rule 2–602, all prior rulings remain interlocutory and subject to revision). We have held, moreover, that "as a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in his discretion, may

ordinarily consider the matter de novo." *State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269, 1283 (1984).

*See also Stewart v. State,* 319 Md. 81, 91, 570 A.2d 1229, 1233 (1990) ("[N]o trial judge is required to abdicate his own individual judgment merely because a colleague of coordinate jurisdiction has made a ruling."). *Cf. Resolution Trust Corp. v. Allen,* 16 F.3d 568, 573 (4th Cir. 1994) ("[A]fter removal [of a case from state court to federal district court,] the district court would adopt the state court judgment as its own.... [Then] the parties would follow the ordinary rules regarding post-judgment remedies. They may file motions pursuant to the applicable Rules of Civil Procedure, or file a timely notice of appeal to the federal appeals court."). Thus, a remand seems especially just (if ironic) since Taylor, the losing party here, originally desired a state court forum, in any event.