**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1400**

───────────────

KRISHNA P. SHARMA POUDEL; BINOD DHAKAL,

       Plaintiffs – Appellants,

   v.

MID ATLANTIC PROFESSIONALS, INC., d/b/a SSI,

       Defendant – Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge.  (8:21-cv-01124-TDC)

───────────────

Argued:  December 6, 2023                 Decided:  August 15, 2024

───────────────

Before RICHARDSON, QUATTLEBAUM, and BENJAMIN, Circuit Judges.

───────────────

Affirmed by published opinion.  Judge Benjamin wrote the opinion, in which Judge Richardson and Judge Quattlebaum joined.

───────────────

**ARGUED**:  Mariusz Kurzyna, ZIPIN, AMSTER & GREENBERG, LLC, Silver Spring, Maryland, for Appellants. Cynthia Cook Robertson, PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., for Appellee. **ON BRIEF**:  Laura Freid-Studlo, Washington, D.C., Richard B. Oliver, Stacie D. Yee, PILLSBURY WINTHROP SHAW PITTMAN LLP, Los Angeles, California, for Appellee.

───────────────

DEANDREA GIST BENJAMIN, Circuit Judge:

Krishna P. Sharma Poudel and Binod Dhakal (together, "Appellants") worked for Appellee Mid Atlantic Professionals, Inc. ("MAPI") as Nepalese-English interpreters, "serving the needs of the U.S. Department of State . . . in Kabul, Afghanistan." J.A. 005. After Appellants' employment ended, they filed the present suit, alleging MAPI failed to pay them all contracted-for and promised wages. MAPI subsequently filed a motion to dismiss.

For the reasons outlined below, we hold that the district court was correct to grant MAPI's motion to dismiss and therefore affirm.

I.

A.[1]

Appellant Poudel worked for MAPI from 2017 to 2021 and Appellant Dhakal worked for MAPI from 2017 to 2019. Poudel signed an employment agreement from her residence in Virginia and Dhakal did the same from his residence in North Carolina. MAPI is domiciled in Maryland and the company executed the employment agreements in Maryland. All of Appellants' work was performed in Afghanistan.

The employment agreements initially provided for pay at $48 per hour, an expenses per diem, annual paid leave, and reimbursement for an annual trip home. MAPI also promised signing bonuses in the amount of $10,000. The employment agreements each

---

[1] The following facts are taken from Appellants' amended complaint.

2

contained a choice-of-law provision, where any contract dispute would be settled under Maryland law.[2]  In 2019, MAPI altered the terms of employment and reduced Appellants' hourly rate of pay, per diem allowance, and annual paid leave.  As well, Appellants were never reimbursed for their annual trips home, nor were they paid overtime in accordance with Maryland law.

## B.

Appellants filed their complaint in the United States District Court for the District of Maryland.  They brought two causes of action under the Maryland Labor and Employment Article—a violation of the Wage and Hour Law ("MWHL") and a violation of the Wage Payment and Collection Law ("MWPCL") (collectively, "Wage Laws").  In sum, Appellants allege that MAPI failed to pay all contracted-for and promised wages.

MAPI filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Wage Laws do not apply to Appellants' claims because Maryland has a presumption against extraterritorial application of statutes.  It argued that since Appellants performed none of their work for MAPI in Maryland and the Wage Laws do not contain an express extraterritorial provision, Appellants are barred from bringing claims under those statutes.

The district court granted the motion to dismiss.  It noted that the Wage Laws had no express extraterritorial provision and that Appellants performed no work in Maryland.

---

[2] The provision in full reads as follows: "To the extent not preempted by federal law, the validity and effect of this Agreement and the rights and obligations of the parties hereto shall be construed and determined [in] accordance with the laws of the State of Maryland without regard to its choice of law principles."  J.A. 006.

3

The court ruled that because Maryland courts require some minimal work to be performed within the state to overcome the presumption against extraterritoriality, dismissal was warranted.

Appellants subsequently filed their notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## C.

On appeal, Appellants argue that an out-of-state employee of a Maryland-based company may take advantage of the Wage Laws because of (1) the employer's location in Maryland and (2) the strong public policy underpinning the Wage Laws. In the alternative, Appellants argue that the Maryland choice-of-law provisions in their employment agreements necessarily encompass the Wage Laws.

We address each argument in turn.

## II.

The court "review[s] a district court's grant of a motion to dismiss de novo. In deciding such a motion, we accept as true all of the factual allegations contained in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 191–92 (4th Cir. 2015) (internal quotation marks omitted). "To survive the motion, a complaint . . . must contain sufficient facts to state a claim that is 'plausible on its face.' " *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.

A.

We begin by laying out the framework of the relevant Maryland laws.

MAPI is an "employer" under Maryland's Wage Laws. *See* Md. Code Ann., Lab. & Empl. § 3-501(b). Relevant to this appeal, it has an obligation to "pay an employee . . . all wages due for work that the employee performed before the termination of employment." *Id*. at § 3-505(a). "Wage includes a bonus; a commission; a fringe benefit; overtime wages; or any renumeration promised for service." *Id*. at § 3-501(c)(2)(i-iv) (cleaned up). Overtime is specifically defined as "at least 1.5 times the usual hourly wage." *Id.* at § 3-415(a).

The district court correctly noted that the presumption against extraterritorial application of Maryland statutes applies to its Wage Laws. *See Chairman of Bd. of Trs. of Emps.' Ret. Sys. v. Waldron*, 401 A.2d 172, 177 (Md. 1979) ("[U]nless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect."). But, the motion to dismiss cannot be resolved simply on the basis of that presumption. We must consider the guidance Maryland courts have provided on the public policy that undergirds the Wage Laws and on the kinds of factual circumstances that would allow an out-of-state employee to take advantage of the Wage Laws.

First, the Supreme Court of Maryland has made clear that "the MWPCL represents Maryland's strong public policy." *Cunningham v. Feinberg*, 107 A.3d 1194, 1197–98 (Md. 2015). The Maryland legislature "added a private right of action [to the Labor & Employment Article] to provide a meaningful remedy to the harm flowing from the refusal

5

of employers to pay wages lawfully due" and "to be an incentive for employers to pay []
back wages." *Id.* at 1202 (internal quotation marks omitted).

Second, Maryland courts have interpreted the meaning of the MWPCL's definition
of an employer. *Himes Assocs, Ltd. v. Anderson*, 943 A.2d 30, 48 (Md. Ct. Spec. App.
2008) (quoting Md. Code Ann., Lab. & Empl. § 3-101(c)(2)(ii)).

In *Himes*, Maryland's intermediate court of appeals (then called the Court of Special
Appeals) held that the MWPCL attached to an out-of-state employer where the employee
"attend[ed] meetings twice a month at . . . [a] Baltimore office." *Id.* at 48. The employee
worked as a project manager for a Virginia company and his primary project's work site
was in Virginia. *Id.* at 36. Because the project was for a Maryland corporation, the
employee was required to travel to Maryland twice a month for meetings. *Id.* Even though
the employer was a Virginia company and the employee performed most of his work in
Virginia, the court reasoned that the company was an "employer" under the plain language
of the MWPCL. *See id.* at 46–49; Md. Code Ann., Lab. & Empl. § 3-101(c)(2)(ii)
("Employ includes instructing an individual to be present at a work site." (internal
quotation marks omitted)).

And in *Cunningham v. Feinberg*, 107 A.3d 1194, 1208–12 (Md. 2015), Maryland's
highest court (then called the Court of Appeals) drew from the analysis in *Himes* to support
its holding that out-of-state employees of out-of-state companies are not automatically
foreclosed from recovering under the MWPCL. In that case, an attorney who worked for
a Virginia-based law firm spent most of his time working in Virginia but was required to
regularly appear for court in Maryland. *Id.* at 1198. Relying on the parties' employment

6

agreement executed in Virginia, the firm argued that *lex loci contractus* controlled. Thus, "because the [employment] contract was a 'Virginia' contract," the firm asserted Virginia law should apply. *Id.* at 1201.

The firm argued that because the contract was a Virginia contract, Virginia's Labor and Employment Code should "be considered part and parcel of the parties' [employment agreement] as implied terms." *Cunningham*, 107 A.3d at 1206, 1208. But the court rejected this, saying that "such an understanding of *lex loci contractus* would be an impermissibly broad application of the doctrine." *Id.* at 1208. It reasoned, "We are unaware of a case in which we used *lex loci contractus* to import another forum's statute into a foreign contract as an implied term and then interpret the contract in light of that implied term to the exclusion of our laws and remedies." *Id.*

The court went on to discuss *Himes* in-depth and discussed its "very similar factual situation." *Id.* at 1208. The court came to the same conclusion as the court in *Himes*: out-of-state employees of out-of-state employers can "in certain circumstances" seek relief under the MWPCL. *Id.* at 1210–11.

## B.

We now apply the guidance from the Maryland courts to the present factual circumstances. As Maryland's "highest court has not directly addressed" whether the Wage Laws apply to employees of a Maryland-based company that performed no work in the state, the court's responsibility is to "anticipate what . . . [the Supreme Court of Maryland's] decision would be." *Zeigler v. Eastman Chem. Co.*, 54 F.4th 187, 194 (4th Cir. 2022) (internal quotation marks omitted).

MAPI argues that an employee can only avail themselves of the Wage Laws if they "ha[ve] been permitted or directed by their employer to perform work in Maryland." Resp. Br. at 8. Like the district court, they read Maryland caselaw to bar extraterritorial application of the Wage Laws in all circumstances, thus requiring some work to be performed in the state for the laws to apply.

Appellants cite *Roley v. National Professional Exchange, Inc.*, 474 F. Supp. 3d 307 (D. Md. 2020), to support their contention that "unlawful wage payment practices taking place in the employer's Maryland office" are the only requirement to circumvent the bar on extraterritoriality. *See* Opening Br. at 10. Appellants also look to public policy to encourage our court to find the Wage Laws apply to their claims. They argue that if the Wage Laws can apply to an out-of-state employer and employee where the employee performs minimal work in Maryland, then those laws must apply to a Maryland corporation, even if the employee never steps foot in Maryland. *See* Opening Br. at 12.

We agree with the district court's conclusion that "Maryland courts have effectively concluded that application of the Maryland wage laws is not extraterritorial . . . when there is at least some work that occurs in Maryland." *Poudel v. Mid Atl. Pros., Inc.*, Civil Action No. TDC-21-1124, 2022 WL 345515, at *3 (D. Md. Feb. 4, 2022). Here, Appellants have not performed any work in Maryland, so any application of the Wage Laws would have an extraterritorial effect. Thus, we hold that the amended complaint was properly dismissed.

First, there is no express provision of the Wage Laws that allows extraterritorial application. Second, Appellants' reliance on *Roley* is misplaced. In *Roley*, the plaintiff-employee worked for a Maryland company that conducted its payroll from Maryland. 474

8

F. Supp. 3d at 720.  The extent of the employee's contact with Maryland was receiving his paycheck from the Maryland office and "work[ing] in Maryland during seven multi-day business trips."  *Id*.  The district court held that the plaintiff-employee's "work for a Maryland-based company that paid him from a Maryland office, which included several work trips to Maryland, provides more than a sufficient basis to permit the application of the MWPCL."  *Id.*

Appellants conclude that all that was required for the MWPCL's application was working for a Maryland company that performed payroll in Maryland.  The holding in *Roley*, though, is not so limited.  The court expressly ruled that the plaintiff-employee's "work" included "work trips to Maryland."  *See id*.  Appellants' attempt to read this out of the court's ruling falters as well because it ignores the court's explicit reliance on *Himes*, where Maryland's intermediate appellate court confronted a similar factual circumstance involving an out-of-state employee making work trips to Maryland.  *See id.*  The district court rejected those plaintiffs' arguments that their limited connection to Maryland triggered the application of the Maryland Wage Laws.

Third, though Appellants correctly point out that Maryland has a public policy in favor of the Wage Laws' application, they point to no caselaw—and none exists—that extends the public policy to conduct with no ties to Maryland.

We decline today to create that precedent for Maryland and hold that the bar against extraterritoriality applies to Appellants' claims.

IV.

9

Appellants' final argument rests on the choice-of-law provisions in their employment agreements. Appellants would have us hold that the choice of Maryland law in those agreements is sufficient to defeat the presumption against extraterritoriality. This argument is without merit, and we therefore affirm the district court's well-reasoned order.

The employment agreements contain a straightforward choice-of-law provision selecting Maryland law as controlling.[3] Appellants assert that "judges in the District of Maryland [repeatedly] . . . honor 'extraterritorial' choice-of-law provisions in wage cases," citing with approval two District of Maryland cases, *Taylor v. Lotus Development Corp.*, 906 F. Supp. 290 (D. Md. 1995), and *Blanch v. Chubb & Son, Inc.*, 2014 WL 3421534 (D. Md. July 10, 2014). Op. Br. at 17.

The district court correctly noted that *Cunningham* "directly criticized" *Taylor* and "decoupled the issues of the applicable law governing an employment agreement from the applicability of state wage laws." *Poudel*, 2022 WL 345515, at *6. Further, even if this court were to find that the Wage Laws were impliedly incorporated into the contract, we would still have to decide whether that incorporation allows Appellants to bring claims they would otherwise be unable to bring due to Maryland's presumption against extraterritoriality. Based on our review of Maryland law, we believe that answer is no.

Again, we decline to expand the reach of Maryland law and hold that the employment agreements do not overcome the presumption against extraterritoriality.

---

[3] The provision in full reads as follows: "To the extent not preempted by federal law, the validity and effect of this Agreement and the rights and obligations of the parties hereto shall be construed and determined [in] accordance with the laws of the State of Maryland without regard to its choice of law principles." J.A. 006.

10

\*          \*          \*

Maryland precedent makes clear no cause of action under the Wage Laws can be maintained without any work occurring in the state of Maryland.  Because Appellants did not perform any of their work in Maryland, we are constrained to dismiss their claims. Therefore, the district court's judgment is

*AFFIRMED.*