**AUTOCRAT COFFEE, INC.,**

v.

**Margaret LEBRUN,**

**and**

**STATE of Rhode Island,**

v.

**Lawrence L. GOLDBERG.**

**No. 93–605–M.P.**

Supreme Court of Rhode Island.

Oct. 6, 1994.

Jeffrey Pine, Atty. Gen., Richard B. Wooley, Asst. Atty. Gen., Lane W. Newquist, East Greenwich, for Autocrat Coffee, Inc.

John Harnett, Annette Elseth, Providence, Lawrence L. Goldberg, Warwick, for Margaret Lebrun.

## OPINION

PER CURIAM.

This matter arises from an order issued by a Workers' Compensation Court judge finding the petitioner, attorney Lawrence L. Goldberg (Goldberg), in criminal contempt for failure to attend a pre-trial conference regarding the captioned case. This court granted Goldberg's petition for issuance of a writ of certiorari to review the trial judge's contempt finding, stayed the order of the Workers' Compensation Court, and ordered the fine assessed refunded. For the reasons that follow, we quash the finding of contempt.

The facts are not in dispute. All events occurred within the Garrahy Judicial Complex in Providence. On August 20, 1993, the Workers' Compensation Court issued a "Notice of Pre–Trial Conference" in the above captioned case, to be held at 9:30 a.m. on October 19, 1993. The notice indicated that petitioner should "[r]eport to fourth floor for courtroom assignment" and did not designate a specific courtroom. The petitioner appeared at the designated time and, in fact, had arrived prior to the time of the conference. The attorney representing the employer in this case arrived at 9:30 a.m. at courtroom 4M, where he found Goldberg already present; however, the judge was not present. The employer's attorney checked the other courtrooms on the fourth floor to see if the judge might be presiding in another courtroom. He searched all but two of the courtrooms on the fourth floor to no avail and subsequently inquired of other attorneys if they had any knowledge of where the judge might be sitting at 9:30 a.m. He then spoke to another attorney who was also looking for the judge and could not provide any information about the judge's whereabouts.

The employer's attorney then went to the third-floor office of the clerk of the Workers' Compensation Court and was informed that the judge had no regularly assigned clerk. From the judge's stenographer he learned that the judge would be presiding in courtroom 4L. Returning upstairs, the attorney reentered courtroom 4M and informed Goldberg that their case would be heard in courtroom 4L. The employer's attorney then went to courtroom 4L and discovered that the courtroom was occupied by a different judge, who was presiding over a hearing. Thereafter, the employer's attorney and Goldberg went together to the third-floor clerk's office to determine exactly where the judge would be sitting. It was then approximately 10:15 a.m., forty-five minutes beyond the scheduled time of their pretrial conference. Both attorneys spoke with the judge's stenographer, who directed them back to courtroom 4L. Upon entering courtroom 4L, the attorneys observed the other judge presiding over court matters. The two attorneys had a brief discussion, and at 10:20 a.m.

Goldberg informed the employer's attorney that he had to leave. The employer's attorney remained on the fourth floor. The judge appeared in courtroom 4M approximately fifteen minutes later, at 10:35 a.m.

The judge immediately placed the pretrial conference on the record and the matter proceeded ex parte. He then asked the attorney where Goldberg was. The attorney recounted the parties' search efforts to locate the judge and informed him that Goldberg had left. The judge then attempted without success to locate Goldberg.

The judge entered an order requiring Goldberg to appear on November 2, 1993, to show cause why he should not be held in contempt. This date was later continued to November 10, 1993. At the show-cause hearing, petitioner filed several motions: a motion to dismiss, for a bill of particulars, a motion to recuse, a motion for a jury trial, and a motion to call the judge as a witness. All the motions were promptly denied by the judge.

Goldberg's attorney presented his evidence, which consisted solely of the testimony of the employer's attorney faithfully recounting the morning's activity on October 19, 1993. Goldberg then rested.

The judge found Goldberg guilty of criminal contempt and sentenced him to a $750 fine to be paid instantly, or if petitioner was unable to pay the fine, he would be taken immediately to be incarcerated for a period of ten days at the Adult Correctional Institutions. The petitioner paid the $750 fine, and the order was entered on November 12, 1993.

This court will not address the procedural defects in the contempt proceeding, which are legion. In fact several errors would entitle petitioner to a new trial. We prefer, rather, to go directly to the merits. We do so because on the uncontradicted facts petitioner is entitled to prompt and complete exoneration from this finding of criminal contempt.

In order to be found guilty of criminal contempt, a defendant must engage in willful conduct that implies an intended affront to the dignity of the court. *In re Chandler*, 906 F.2d 248, 250 (6th Cir.1990). The act or omission must be accompanied by a mens rea showing an indifference to the court's command. *In re Yengo*, 84 N.J. 111, 128, 417 A.2d 533, 543 (1980). In the case at bar the record clearly shows that petitioner made good-faith efforts to locate the trial judge before the scheduled pre-trial conference. In fact it is uncontradicted that petitioner arrived at the courthouse approximately one hour prior to the scheduled conference and thereafter searched the building with opposing counsel to find the trial judge. Although petitioner left the courthouse without informing the trial judge, it can be said unequivocally that his actions did not rise to "willful conduct" constituting the requisite mens rea necessary for a proper contempt conviction. It is remarkable that the trial judge could believe he was justified in holding someone guilty of criminal contempt for failure to keep an appointment for which the judge himself was one hour and five minutes late.

No less remarkable is the contempt order itself in which the trial judge required the petitioner to pay a $750 fine or immediately be sent to the Adult Correctional Institutions for a period of ten days. The penalty imposed by the trial judge and the manner of its imposition constituted an arbitrary and capricious exercise of judicial power.

For these reasons the petition for certiorari is granted, the order of the trial judge is quashed, and the papers of the case are remanded to the Workers' Compensation Court with direction that the finding of guilt of criminal contempt be expunged from the record forthwith.

WEISBERGER, Acting C.J., did not participate.