DECISION
This matter is before the Court on the motion of Stephen B. Yarlas, Special Master in the instant proceeding, seeking to have Albert Shackleton, a party defendant, adjudged in contempt by reason of actions hereinafter set forth.[1] The matter was heard, testimony taken, and arguments of counsel made on May 10, 1996, at which time decision was deferred pending receipt of memoranda of counsel.
This Court finds the following facts to have been established:
 1. On September 27, 1994, this Court (Madame Justice Savage) entered an order pursuant to Rhode Island Rules of Civil Procedure, Rule 53, appointing Yarlas ". . . as a Special Master . . . to take evidence, issue an accounting and make preliminary findings."
 2. The order was detailed in its content and was tailored to the merits of the underlying controversy among the parties dealing with a sophisticated real estate investment transaction.
 3. The order gave Yarlas, as Special Master, the power to ". . . hold hearings; subpoena documents and witnesses; receive submissions from the parties; hold ex parte conferences with the parties; obtain copies of transcripts of all depositions taken by the parties and of the hearings held . . .; and conduct ex parte
communications with Savage, J. concerning this order . . . and all other matters which the Special Master deems appropriate."
 4. Yarlas is both a certified public accountant and an attorney-at-law and was selected as Special Master because of the complexity of the accounting and legal issues forming the basis of the litigation among the parties.
 5. Thereafter Yarlas undertook the performance of his duties and ultimately, on or about June 20, 1995, rendered a lengthy written report to the Court and to counsel for the respective parties with respect to the matters subject to the provisions of the hereinbefore mentioned order.
 6. The Court order of September 27, 1994, had provided in Paragraph III that the fees and expenses of Yarlas initially would be paid one-half by the plaintiff and one-half by the defendants. That order further provided that at the ultimate trial of the matter the parties would be entitled to seek recovery of all amounts paid by them with respect to the provisions of said Paragraph III as damages.
 7. This Court ultimately approved the Master's fees and expenses in the total amount of $38,518.85 and ordered defendants to pay of that amount $21,225.10 as their share.[2]
 8. The trial of the case commenced on December 5, 1995, to a judge sitting with a jury.
 9. Following four (4) trial days, the parties announced they had reached a negotiated settlement of the matter, stated on the record an outline of the salient points of their settlement, and indicated to the Court that a written settlement stipulation would be filed in due course. At that time the Court dismissed the jury. Many months transpired before the stipulation actually was filed and during that several month period the Court engaged in a great deal of prodding of the parties in order to obtain the settlement stipulation.
 10. Defendants paid their share of the Master's fees and expenses on or about March 15, 1996.
 11. On April 10, 1996, Shackleton appeared at Yarlas' professional offices in Warwick without an appointment and insisted upon seeing Yarlas. Ultimately, on that date and at that time and place Yarlas met with Shackleton. Shackleton told Yarlas that he had shown Yarlas' report to other accountants who indicated that it was faulty. Shackleton further indicated to Yarlas that he would sue Yarlas for "malpractice" unless Yarlas returned to Shackleton the $21,225.10 in fees awarded by this Court as the share to be paid by the defendants of Yarlas' full fees.[3]
 12. Shackleton never brought the alleged "malpractice" to the Court's attention nor did he ever seek reconsideration by this Court of the order with respect to the allocation among the parties of Yarlas' fees and expenses.
A finding of contempt is well within the sound discretion of the trial justice. Brierly v. Brierly, 431 A.2d 410, 412 (R.I. 1981). Civil contempt is distinguished from criminal contempt in that the sanction is "remedial and designed to reimburse complainants for the wrong done as a result of the noncompliance with a valid order of the court." Nelson v. Progressive RealtyCorp., 81 R.I. 445, 448, 104 A.2d 241, 243 (1954). In contrast, criminal contempt is punitive in nature. Nelson, 81 R.I. at 448, 104 A.2d at 243. Criminal contempt punishes the contemnor for acts insulting or belittling the authority and dignity of the court. Durfee v. Ocean State Steel, 636 A.2d 698, 704 (R.I. 1994). Although the sanction should be cautiously applied, its application is appropriate in circumstances where the authority and the prestige of the court are affected. State v. Champa,494 A.2d 102, 106 (R.I. 1985).
In the matter at hand, Shackleton disagreed with the Court's division of the Master's fees, yet complied with the order. Therefore, he cannot be held in civil contempt. This Court must then determine whether Shackleton should be held in criminal contempt.
In order to be found guilty of criminal contempt, a defendant must (1) engage in willful conduct that implies an intended affront to the dignity of the court, and (2) the conduct must be accompanied by a mens rea showing an indifference to the court's command. Autocrat Coffee, Inc. v. LeBrun, 648 A.2d 371, 373 (R.I. 1994).
Shackleton's visit to Yarlas' office and the subsequent demand of repayment constitutes "willful conduct that implies an intended affront to the dignity of the court." Id. Shackleton arrived at Yarlas' office, unannounced, and demanded to be reimbursed for the fees he paid less than a month earlier. Furthermore, he threatened to sue Yarlas for malpractice (in the amount of $1,500,000) if he did not comply with the demand. Shackleton acted in blatant disregard to the dignity of this Court. Therefore, the first element of criminal contempt is satisfied.
Next, Shackleton argues that absent a showing of knowledge that a legitimate claim did not exist against Yarlas, he could not have committed knowing and willful contempt of this Court.[4] Although criminal contempt does have an element of knowledge, it is the knowledge that his actions were indifferent to the court's order, Autocrat Coffee, Inc., 648 A.2d at 373, not the knowledge that he may not have a claim against Yarlas for malpractice. Shackleton knew this Court ordered him to pay $21,225.10 in master's fees. He also knew that by demanding repayment from Yarlas he was acting in defiance of that order. Based upon his actions, and the knowledge that these actions were clearly indifferent to the Court's order, the second element of criminal contempt is satisfied.
Rule 53 of the Rhode Island Rules of Civil Procedure grants the Court authority to appoint a special master. Yarlas argues that when appointed he was "cloaked with judicial authority and power."[5] This Court agrees. "When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges — that is, because they, too, exercise a discretionary judgment as a part of their function." Antoine v. Byers Anderson, Inc.,508 U.S. 429, 434, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391, ___ (1993).
The United States Supreme Court has distinguished judicial acts for which absolute immunity necessarily attaches and administrative acts for which such immunity is not available. SeeForrester v. White, 484 U.S. 219, 229-30, 108 S.Ct. 538, 545-46, 98 L.Ed.2d 555, ___ (1988). Judicial acts are those involving the "`performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'"Antoine, 508 U.S. at 435, 113 S.Ct. at 2171 (quoting Burns v.Reed, 500 U.S. 478, 499, 111 S.Ct. 1934, 1946, 114 L.Ed.2d 547, ___ (1991). Administrative acts, on the other hand, are, among others, those "involved in supervising court employees and overseeing the efficient operation of a court." Forrester, 484 U.S. at 229, 108 S.Ct. at 545.
Relying on Vanacore v. Castiglia, 161 F. Supp. 293 (S.D.N Y 1958), Shackleton contends that Yarlas is no more than a court-appointed expert witness and had no adjudicatory functions. This reliance is misplaced and not applicable.[6] In Vanacore, an auditor was appointed to inspect the defendant's books and make a report to the plaintiff. The auditor wanted the court to establish his compensation and create a lien in that amount upon any recovery. The Court, however, denied the auditor's motion stating that it had no authority to set compensation because Vanacore is not a "master" within the terms of Rule 53 F.R.Civ.P. Id.[7]
In the case at bar, Yarlas was appointed as a master. The compensation he received was to be determined by the court. This determination, and Shackleton's disagreement with the order with respect to compensation, is the reason that this issue is before this Court.
The consent order issued by Madame Justice Savage gave Yarlas as Special Master the power ". . . to take evidence, issue an accounting and make preliminary findings." The order gave Yarlas the power to ". . . hold hearings; subpoena documents and witnesses; receive submissions from the parties; hold ex parte conferences with the parties; obtain copies of transcripts of all depositions taken by the parties and of the hearings . . .; and conduct ex parte communications with Justice Savage . . . ." In exercising these powers, Yarlas was performing judicial acts by resolving the disputes between the parties and using his discretionary judgment. Yarlas was an officer of the court engaged in judicial acts which he was authorized to perform by the consent order.
Shackleton participated in the judicial process when he entered into the consent order, met with Yarlas in his capacity as a Special Master, and went to trial. The parties eventually entered into a settlement. As a result, this Court ordered that Shackleton pay $21,225.10 in master's fees, an order with which Shackleton complied. Ultimately, Shackleton took it upon himself to rectify what he believed to have been an injustice to him committed by the the Court appointed Master. He unilaterally went to Yarlas' office and demanded "his" money back which in effect undermined the authority of this Court. Shackleton availed himself of the judicial system throughout the entire process until this final action. He then illustrated a lack of respect for the judicial process and insulted and belittled the authority of this Court.
Through the judicial system, Shackleton had procedural means available to him if he wished to object to the order. He could have filed a motion to vacate under Rule 60 of the Rhode Island Rules of Civil Procedure, or a motion to reconsider. Shackleton claims he went to Yarlas because he had consulted with other accountants who represented that Yarlas' report was faulty. Shackleton could have brought this information to the Court's attention where it would have been entertained and, if appropriate, the order could have been modified. Instead, Shackleton independently chose a different course of action in seeking out Yarlas and demanding repayment. It is for this action he is being held in contempt.
Accordingly, Shackleton hereby is adjudged to be in criminal contempt. The Court will hear argument of counsel with respect to appropriate fines and/or other sanctions.
Counsel for the Master shall prepare an order consistent herewith which will be settled upon appropriate notice and opportunity for hearing.
[1] The Court finds that the procedure followed herein substantially complied with Rule 42(b) of the Superior Court Rules of Criminal Procedure.
[2] The deviation from the fifty-fifty split set forth in the Court's order of September 27, 1994, was occasioned by this Court's finding that the defendants' failure to cooperate was the cause of the magnitude of the Master's fees and expenses. The Court assessed the additional fees and costs against defendants in the first instance.
[3] Yarlas testified that Shackleton's demeanor was hostile and threatening. Basically, Shackleton characterized the discussion as informational but there is no real dispute between Shackleton and Yarlas as to what was said. In the view taken by this Court, whether the demeanor of Shackleton was threatening or informational is of no consequence to the ultimate decision on the merits of Yarlas' motion.
[4] Shackleton contends that ". . . words of displeasure — even those which may carry some threat of future unpleasantries — are a fact of life in this arena . . . ." This Court does recognize and identify with Shackleton's "thick skin" argument. Yarlas, when faced with Shackleton's demand, should have allowed Shackleton to bring about a malpractice suit, which this Court believes would be unsuccessful based upon quasi-judicial immunity. Yet, hindsight is twenty-twenty. Yarlas, in his capacity as an officer of the court, should and will be afforded the protection of this Court.
[5] Yarlas' memorandum focuses heavily on quasi-judicial immunity. This Court does not disagree that if Shackleton had brought the malpractice action, Yarlas would have been protected, but believes that this analysis is premature since no suit was ever brought.
[6] The parties entered into a consent order which states, "By agreement of the parties . . . Yarlas is hereby appointed as a Special Master . . . ." This Court is not aware that Shackleton, at any time, objected to Yarlas being appointed as a master. The current objection by Shackleton to Yarlas' "judicial authority" was waived when the parties consented to his involvement in their case in accordance with the consent order.
[7] Pursuant to F.R.Civ.P., Rule 53, compensation is to be fixed by the Court. R.I.Civ.P. Rule 53 also gives the court the authority to set compensation.