DECISION
This matter is presently before the Court pursuant to a consent order in which the parties agreed to submit an Agreed Statement of Facts and memoranda of law regarding the remaining issues in the case.[1] The issues remaining for decision are: 1) whether Defendant, Dennis Hilliard ("Hilliard"), failed to comply with the terms of a Temporary Restraining Order, and, if so, whether he should be found in contempt for violating that Order; and, 2) whether, pursuant to the Defendants' counterclaim, the State and the University of Rhode Island are entitled to reimbursement for certain benefits and compensation received by the Plaintiff, Richard C. Wilkinson, during his term of employment between July 1, 1978 and July 1, 1994. All parties have waived any claim they have to a trial by jury. Therefore, this Court will make a final decision on the merits according to the Agreed Statement of Facts and memoranda submitted by the parties.
 Facts/Travel
Due to the lengthy nature of this matter since its inception in 1994, the facts and circumstances of this action will be summarized according to the specific issues that remain. According to the Agreed Statements of Facts, the Plaintiff worked at the State Crime Laboratory from the early 1970's through approximately January 1996. His employment ended when the Crime Laboratory Commission voted not to reappoint him to any position within the Crime Laboratory on or about January 23, 1996. Prior to that date, the Plaintiff filed a complaint regarding circumstances surrounding his employment. On April 24, 2000, however, Judge Hurst granted the Defendants' motion for summary judgment and dismissed every count against them except a contempt count against Hilliard. The only matters that remain for decision involve that contempt count and a counterclaim by the Defendants seeking reimbursement from the Plaintiff.
 I The Count for Contempt Against Dennis Hilliard
The Plaintiff alleges that Hilliard violated a Temporary Restraining Order ("TRO") issued by Judge Clifton on January 22, 1996. The TRO stated as follows:
 ORDER On the 22nd day of January 1996 the above-styled cause came on to be heard before this Honorable Court upon plaintiff Richard Wilkinson's Motion for a Temporary Restraining Order enjoining defendant Dennis Hilliard from any and all further action against plaintiff for refusal to clean the radioactive safe at the State Crime Laboratory, including any further discipline, reprimands, memorandums, correspondence, or any entries of any sort regarding this issue into plaintiff's personnel file. Upon consideration of the arguments and positions presented, it is hereby ORDERED, ADJUDGED and DECREED
plaintiff's Motion for a Temporary Restraining Order is granted and the defendant Dennis Hilliard is temporarily restrained from any and all further action against the plaintiff for his refusal to clean the radioactive safe at the State Crime Laboratory, including any further discipline, reprimands, memorandums, correspondence, or any entries of any sort regarding this issue into plaintiff's personnel file.
On January 23, 1996, the day after the TRO was issued, "defendant Hilliard reported to the defendant Commission at a regularly scheduled Commission meeting, whereupon its members unanimously voted `to not reappoint [plaintiff] to any position with the Rhode Island State Crime Laboratory.'" Agreed Statement of Facts, ¶ 11. The Plaintiff alleges that Hilliard violated the TRO when he presented his report to the Crime Laboratory Commission at that meeting, and that his contempt for the TRO "led to the premature loss of plaintiff's employment." Plaintiff's Trial Memo., p. 7.
 II The Defendants' Counterclaim for Reimbursement
On January 12, 1996, Judge Savage held that the Plaintiff was a classified employee of the State Crime Laboratory Commission from July 1, 1978 to approximately June of 1994, and not an employee of the University of Rhode Island. See file No. KC 94-1035. As a result of this decision, and based upon the Plaintiff's complaint, the Defendants seek in their counterclaim reimbursement from the Plaintiff "for the difference between what he was paid as an employee of URI from July 1, 1978 to
July 1, 1994 and what he would have been paid if he were paid as an employee of the Commission during that period."[2] State of RhodeIsland's Trial Memo., p. 5. The Defendants argue that had the Plaintiff been considered an employee of the Crime Laboratory Commission, he would not have been entitled to any of the benefits granted to employees of the University of Rhode Island.
 Analysis I The Count for Contempt Against Dennis Hilliard
The Plaintiff alleges civil contempt, rather than criminal contempt, in his complaint and supporting memoranda. The Rhode Island Supreme Court has pointed out the differences between criminal and civil contempt when it stated "[c]riminal contempt punishes the contemnor for an act insulting or belittling the authority and dignity of the court whereas in civil contempt the purpose of the sanction imposed is to coerce the contemnor into compliance with the court order and to compensate the complaining party for losses sustained." Durfee v. Ocean State Steel, Inc., 636 A.2d 698,704 (R.I. 1994). The Court has stated that although willful conduct on the contemnor must be found under criminal contempt, "[w]illfulness need not be shown as an element of civil contempt." See AutocraftCoffee, Inc. v. LeBrun, 648 A.2d 371, 373 (R.I. 1994); Trahan v.Trahan, 455 A.2d 1307, 1311 (R.I. 1983). Our Supreme Court has also noted that "the line between civil contempt and criminal contempt is often not clearly defined, and the two concepts may overlap."Ventures Management Co., Inc. v. Geruso, 434 A.2d 252, 253 (R.I. 1981) (citing Nelson v. Progressive Realty Corp., 104 A.2d 241, 242-43 (1954)).
Recently, the Rhode Island Supreme Court reiterated that "the matter of contempt is addressed to the sound discretion of the trial justice, to be exercised in accordance with the particular facts and findings as to the extent and willfulness of respondent's contempt for the authority and the dignity of the court." Zannini v. DowningCorp., 701 A.2d 1016, 1018 (R.I. 1997) (citing School Committee ofNorth Providence v. North Providence Federation of Teachers, Local920, 468 A.2d 272, 276 (R.I. 1983). "Civil contempt . . . is established when it is proved by clear and convincing evidence that a lawful decree was violated." Durfee v. Ocean State Steel, Inc.,636 A.2d 698,704 (R.I. 1994). "A finding of civil contempt must be based on a party's lack of substantial compliance with a court order, demonstrated by a failure of a party to `employ the utmost diligence in discharging [its] . . . responsibilities.'" Id. Our Supreme Court has also noted that a "civil contempt ordinarily consists in intentionally disobeying an order of the court for the benefit of an opposing party in a civil action." Nelson v. Progressive RealtyCorp., 104 A.2d 241, 243 (1954). Therefore, in the present action, the Plaintiff must prove by clear and convincing evidence that Hilliard intentionally failed to be in substantial compliance with the TRO.
The Plaintiff asserts in his memorandum to the Court that Hilliard's alleged contempt led to the premature loss of his employment. He also maintains that the "Agreed Facts, specifically Hilliard's cited deposition testimony and the minutes reflecting plaintiff's immediate termination thereafter, are the basis for concluding that there was not just a lack of substantial compliance with Judge Clifton's order of January 22d 1996, but downright contradiction thereof." Plaintiff's Trial Memo., p. 7. The State of Rhode Island argues: 1) Hilliard did not violate the specific terms of the TRO, and 2) the Plaintiff has not proven that Hilliard had notice of the court order and intentionally disobeyed it.
The Rhode Island Supreme Court has recognized that courts have a special duty to exercise the extraordinary power of contempt with the "utmost sense of responsibility and circumspection." State v. Price,672 A.2d 893, 897 (R.I. 1996). It is this reasoning that compels our Courts to find clear and convincing evidence that a court order was violated before holding a person in contempt. See Durfee at 704. Due to the harsh nature of contempt, it would be an abuse of discretion to find a person in contempt of a court order without the requisite evidence showing that the court order was violated.
In the present case, the Plaintiff has not proven by clear and convincing evidence that the TRO was violated. Hilliard states that he "can not recall if he was informed of the Judge Clifton restraining order before the January 23rd, 1996 Rhode Island State Crime Laboratory Commission meeting." Agreed Statement of Facts, ¶ 12. Unfortunately, the minutes of the Commission hearing offer no assistance as to what Hilliard specifically said at the meeting, or whether he had any knowledge of the TRO. Absent clear and convincing evidence, this Court is constrained to hold that Hilliard did not violate the TRO. There is no evidence that clearly shows Hilliard violated the TRO by speaking with the Commission on January 23rd, 1996, nor is there convincing evidence that Hilliard even had notice of the TRO before the meeting and intentionally violated it. Furthermore, the Plaintiff has not proven that he was not reappointed only because Hilliard mentioned the issue of the radioactive safe. In fact, Hilliard testified that that was just "one of the number of issues I had with Dick Wilkinson over the last year or so," and was just "part of an entire presentation to the Commission." AgreedStatement of Facts, ¶ 13. Hilliard also testified that his primary motivation for going before the commission was the plaintiff's "abusive use of sick leave." Hilliard Depo., p. 92.
As mentioned previously, the purpose of civil contempt is to coerce the contemnor into compliance with a court order and to compensate the complaining party for losses sustained. See Durfee at 704. It is difficult to conclude that the TRO had a coercive effect on Hilliard because the Plaintiff has been unable to clearly show that Hilliard even had knowledge of the TRO prior to the Commission meeting. The facts and circumstances of the case simply do not support any finding of contempt insofar as the "extent and willfulness" of Hilliard's disregard for the TRO. See Zannini at 1018 (citing various cases). Also, a review of the Agreed Statement of Facts and the sparse minutes of the Commission hearing certainly does not prove that the Plaintiff's alleged losses were caused by the fact Hilliard mentioned the radioactive safe issue at the meeting. As the facts indicate, there could have been a number of reasons why the Commission chose not to reappoint him. The goals of civil contempt are simply not achieved under the facts of the present case. Therefore, the Plaintiff's count for contempt against Dennis Hilliard is dismissed, in that the Plaintiff has not come forth with clear and convincing evidence that Hilliard violated or failed to substantially comply with the TRO.
 II The Defendants' Counterclaim for Reimbursement
The Defendants' allege that the Plaintiff should reimburse them for compensation and benefits which he should have never received because of his status as a commission employee. However, the fact that the Plaintiff received these benefits was not based on a mistake of fact as to his duties or position, or due to a mistake such as a computational error. See Taylor v. Lotus Development Corp.,906 F. Supp. 290 (D. Maryland 1995). Nor was the Plaintiff unjustly enriched. Id. The basis for the Plaintiff's compensation and benefits during the time the Defendants mention had little or nothing to do with the status of his employment or the title of his employer. The Defendants simply offered him salary and benefits based upon his position which the Plaintiff accepted as part of his agreement to work. See Rhode Island Five v. Medical Associates of Bristol County,Inc., 668 A.2d 1250, 1253 (R.I. 1996) ("The long-recognized essential elements of a contract are "competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation.") (citing Black's Law Dictionary 322 (6th ed. 1990);Lamoureux v. Burrillville Racing Ass'n, 161 A.2d 213, 215 (1960)). Furthermore, although the Defendants offer charts to show the difference of salary between an employee labeled as classified or non-classified, or labeled as a URI employee or a State Laboratory Commission employee, URI's Labor Relations Coordinator herself stated that an employee's salary depends on his or her position, and not their "status." Agreed Statement of Facts, ¶ 24. Therefore, the Defendants' counterclaim is denied and this matter is dismissed.
[1] On April 24, 2000, Judge Hurst granted the Defendants' Motion for Summary Judgment on all counts of the complaint except the count of contempt against Dennis Hilliard. The Defendants' counterclaim and the contempt count are all that remain.
[2] The Defendants claim that the Plaintiff should reimburse the State and the University of Rhode Island for raises and salary the Plaintiff would not have received but for his mistaken status as an employee of URI. The Defendants also argue that the Plaintiff was allowed to work only three days out of a five day work week as part of a "professor status," and that the Plaintiff took advantage of that status between approximately July of 1990 to February of 1992. The University of Rhode Island also alleges that it should be reimbursed for tuition waivers granted to his children as part of the benefits of having the status of a URI employee. The amount demanded under the counterclaim by the State is: $19,739.42, for the difference between salaries for someone holding the status of a URI employee rather than a commission employee; $27,490.23, which represents 40% of the Plaintiff's salary when working three days out of five as a "URI professor;" and, $11,777.00, demanded by the University of Rhode Island, for the Plaintiff's children's tuition waivers granted because of his status as a URI employee, plus interest and costs.